IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

CIVIL ACTION NUMBER:            2:25-cv-11250-DCN

| | |
|---|---|
| Next Insurance US Company,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Shelter Mount Pleasant, LLC d/b/a The Shelter Kitchen Bar and Mia Maupin,<br><br>　　　　Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Next Insurance US Company, seeking a declaration of rights from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, alleges as follows:

## PARTIES

1.      Next Insurance US Company ("Next") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California.

2.      Shelter Mount Pleasant, LLC d/b/a The Shelter Kitchen + Bar ("Shelter") is a limited liability company organized and existing under the laws of the State of South Carolina and, upon information and belief, its member(s) are citizens of the state of South Carolina.

3.      Upon information and belief, Defendant Mia Maupin is a citizen and resident of Mecklenburg County, North Carolina.

## JURISDICTION & VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.      The District of South Carolina, Charleston Division, is the proper venue under 28 U.S.C. § 1391(b)(1)–(2) and Local Civ. Rule 3.01(A)(1) (D.S.C.), because a substantial part of the events or omissions giving rise to the claim occurred within this district and division; and the Underlying Lawsuit giving rise to the claims at issue is pending in this district.

6.      There is an actual controversy between the parties such that a declaration of the parties' respective rights is proper under 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

### Insurance Policy

7.      Next issued insurance policy number NXTHLPQTVL-00-GL ("the Policy") to the Named Insured, "Perry Freeman/ Shelter Mount Pleasant LLC," for the policy period of March 14, 2022, to March 14, 2023.   See Exhibit A.

8.      The Policy's Commercial General Liability Declarations state that the Policy affords coverage with a $1,000,000 "each occurrence" limit.

9.      The Policy states, in pertinent part, "Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered."

10.     The Policy's Commercial General Liability Coverage Form states, in pertinent part, that for Coverage A – Bodily Injury and Property Damage Liability, Next "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

'property damage' to which this insurance applies" and Next "will have the right and duty to defend the insured against any 'suit' seeking those damages."

11.     The Policy's Commercial General Liability Coverage Form states, in pertinent part, that for Coverage B – Personal and Advertising Injury Liability, Next will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and Next "will have the right and duty to defend the insured against any 'suit' seeking those damages."

12.     Per the Policy, the insurance provided by Coverage B does not apply to "'Personal and advertising injury' expected or intended from the standpoint of, or caused by or at the direction of, the insured.  This exclusion applies regardless of the presence or absence of knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

13.     Per the Policy, the insurance provided by Coverage B does not apply to "'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured."

14.     The Policy defines "Bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

15.     The Policy defines "Property damage" to mean, in pertinent part, "a. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

16.    The Policy defines "Personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

17.    By virtue of an endorsement, the Policy defines an "occurrence" as "a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions; and b. 'Property damage' or 'bodily injury' resulting from faulty workmanship, exclusive of the faulty workmanship itself."

18.    The Policy contains an Assault and Battery exclusion that excludes coverage under Coverage A for "'Bodily injury' or 'property damage' arising from, or caused in whole or in part by, an 'assault and battery.'"

19.    Per the Policy, the Assault and Battery exclusion applies for Coverage A "regardless of the degree of culpability or intent and without regard to: (1) Whether the 'assault and battery' is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly: (a) At the instruction or direction of, or is instigated by, the insured, or the insured's officers, 'employees,' 'volunteer workers,' agents, or servants; (b) By the insured's customers, patrons, or guests; (c) By any other person on, at, or

near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or (d) By any other person or entity, by any means or cause whatsoever; (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (3) The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, 'employees,' 'volunteer workers,' agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to: (a) Prevent, bar, suppress, or halt an 'assault and battery' by any person; (b) Provide an environment safe from an 'assault and battery' by any person; or (c) Warn of the dangers of the environment that could contribute to an 'assault and battery' by any person."

20.     The Policy states that with regards to the Assault and Battery exclusion for Coverage A, "[w]ithout limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with 'bodily injury' or 'property damage' arising from, or caused in whole or in part by, an 'assault and battery': (a) Emotional injury or distress; (b) One or more of

loss of society, companionship, services, consortium, and income; (c) Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or (d) Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the 'bodily injury' or 'property damage.'"

21.     The Assault and Battery Exclusion further states the insurance provided by Coverage B does not apply to "personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery."

22.     The Policy states the Assault and Battery Exclusion for Coverage B "applies regardless of the degree of culpability or intent and without regard to: (1) Whether the 'assault and battery' is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly: (a) At the instruction or direction of, or is instigated by, the insured, or the insured's officers, 'employees,' 'volunteer workers,' agents, or servants; (b) By the insured's customers, patrons, or guests; (c) By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or (d) By any other person or entity, by any means or cause whatsoever; (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (3) The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, 'employees,' 'volunteer workers,' agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to: (a) Prevent, bar, suppress, or halt an 'assault

and battery' by any person; (b) Provide an environment safe from an 'assault and battery' by any person; or (c) Warn of the dangers of the environment that could contribute to an 'assault and battery' by any person.

23.     The Policy further states that with regards to the Assault and Battery Exclusion for Coverage B, "[w]ithout limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with 'personal and advertising injury' arising from, or caused in whole or in part by, an 'assault and battery': (a) Emotional injury or distress; (b) One or more of loss of society, companionship, services, consortium, and income; (c) Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or (d) Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the 'personal and advertising injury.'"

24.     "Assault and battery" are defined within the Policy to mean: "'Assault and battery' means one or more of the following: a. Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence; b. Harmful or offensive contact between or among two or more persons; c. Apprehension of harmful or offensive contact between or among two or more persons; d. Threats or abuse by words, acts, gestures, or deeds; e. Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and f. Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) a., b., c., d., or e. above."

25.     The Policy also excludes coverage under Coverage A for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

26.     By virtue of the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, the Policy states Coverage A – Bodily Injury and Property Damage Liability applies only if the "bodily injury" . . . "Arises out of the project or operation shown in the Schedule."

27.     By virtue of the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, the Policy states Coverage B  Personal And Advertising Injury Liability applies to "'personal and advertising injury' caused by an offense committed in the 'coverage territory' but only if: (1) The offense arises out of your business: (a) Performed on the premises shown in the Schedule; or (b) In connection with the project or operation shown in the Schedule . . . ."

28.     The Schedule of Project or Operation attached to that endorsement states "Activities related to operating a restaurant." Moreover, that schedule states "Restaurant operations do not include: 4. Operations as a bar, tavern, sports bar, night club, cabaret, discotheque, gentlemans club or similar business . . . 6. Selling or serving alcoholic beverages without a valid license, permit or training required to do so."

29.     The Policy contains an Abuse or Molestation Exclusion that states the Policy's Coverage A and Coverage B do not cover "Any liability arising out of: (1) The actual, threatened or alleged: (a) Sexual abuse; (b) Sexual molestation; (c) Sexual victimization; (e) Physical abuse; (f) Physical assault; or (g) Coercion to engage in sexual activities; of any person by any 'employee', assistant, 'volunteer worker' or member of any insured; or (2) Any injury resulting from the actual, threatened or alleged acts listed in subparagraphs (1)(a) through (1)(g) above; or (3) The negligent; (a) Employment; (b) Investigation; (c) Supervision; (d) Reporting or failure to

report to the proper authorities; or (e) Retention of any 'employee', assistant, 'volunteer worker' or member of any insured whose conduct would be excluded by subparagraph 1. Above."

30.     The Policy contains a "Non-Compensatory Damages" exclusion, which provides that for Coverage A and Coverage B: "This insurance does not apply to any claim for or awards of non-compensatory damages, including, but not limited to: 1. Punitive, exemplary or multiple damages; 2. Equitable or non-pecuniary relief; or 3. Fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards."

31.     The Policy contains a Miscellaneous Service Providers Professional Liability endorsement that states Next "will pay all sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' caused by a 'professional incident' to which this insurance applies." "Professional incident" is defined as "a. An actual or alleged negligent act, error or omission in the rendering of or failure to render 'professional services' for others by an insured." "Professional services" is defined to mean "only those services or activities described as part of the Class Description in the SCHEDULE above," and that Schedule states "Activities related to operating a restaurant." Moreover, that schedule states "Restaurant operations do not include: 4. Operations as a bar, tavern, sports bar, night club, cabaret, discotheque, gentlemans club or similar business. . . . 6. Selling or serving alcoholic beverages."

32.     The Miscellaneous Service Providers Professional Liability endorsement excludes coverage for "c. 'Bodily injury' or 'property damage' resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct; d. 'Bodily injury' or 'property damage' caused by a person under the influence of intoxicants or narcotics; g. 'Bodily injury' or 'property damage' arising out of willful violation of a penal statute or ordinance committed by or with the

knowledge or consent of any insured; h. 'Bodily injury' or 'property damage' arising out of the performance of any dishonest, fraudulent, or criminal acts . . . ."

### Underlying Claim and Lawsuit

33.     Defendant Maupin filed the lawsuit captioned *Mia Maupin v. Shelter Mount Pleasant, LLC d/b/a The Shelter Kitchen + Bar, Stokes Avinger Brownlee* (2025-CP-10-02081) in the Charleston County Court of Common Pleas on April 15, 2025.  That Complaint (Exhibit B) ("the Complaint") contended that on February 17, 2023 ("the Subject Incident"), Defendant Maupin and Stokes Avinger Brownlee were both patrons at Shelter.

34.     The Complaint alleges Brownlee was in a "visibly intoxicated" state during the Subject Incident; however, despite his visible intoxication, Shelter's employees purportedly allowed Brownlee on the premises and "repeatedly sold and served him alcoholic beverages." According to Defendant Maupin's Complaint, Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and these actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers."  The Complaint alleges Brownlee's conduct included "physically picking her up, grabbing her buttocks in a sexual manner, making unwanted and unreciprocated verbal remarks of a sexual nature, and relentlessly following Ms. Maupin around the premises as she tried to get away from him – all without Ms. Maupin's permission or consent."

35.     The Complaint states that an unknown person contacted law enforcement, who arrived on the premises and arrested Brownlee, charging him with Third Degree Assault and Battery, which he later pled guilty to.

36.    The Complaint contains the following causes of action: (1) negligence and gross negligence- negligent security against Shelter, (2) negligence, gross negligence, and negligence per se – dram shop against Shelter, and (3) negligence, gross negligence, and negligence per se against Brownlee.

37.    The Complaint seeks an award of actual and punitive damages, as well as the costs of the Underlying Lawsuit.

38.    Next has provided a defense to Shelter in the Underlying Lawsuit pursuant to a full reservation of rights.

## FOR A FIRST DECLARATION

39.    The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

40.    The Policy's Commercial General Liability Coverage Form states, in pertinent part, that for Coverage A – Bodily Injury and Property Damage Liability, Next "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and Next "will have the right and duty to defend the insured against any 'suit' seeking those damages."

41.    The Policy defines "Bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

42.    The Policy defines "Property damage" to mean "a. physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it. . . ."

43.     The Complaint alleges Defendant Maupin was the recipient of unwanted and unreciprocated verbal remarks or perceived "stalking," as well as harassment.

44.     Such or similar allegations do not constitute "damages because of 'bodily injury' or 'property damage'" and are not covered by the Policy.

45.     Next seeks a declaration from this Court that some or all of the allegations of the Complaint do not constitute "damages because of 'bodily injury' or 'property damage' to which this insurance applies;" the Policy does not afford coverage for some or all claims or damages alleged in the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## FOR A SECOND DECLARATION

46.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

47.     The Policy provides that Coverage A "applies to 'bodily injury' and 'property damage' only if . . . "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"

48.     By virtue of an endorsement, the Policy defines an "occurrence" as "a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions; and b. 'Property damage' or 'bodily injury' resulting from faulty workmanship, exclusive of the faulty workmanship itself."

49.     The allegations of the Complaint do not constitute an "occurrence" as defined by the Policy and therefore are not covered by the Policy's Coverage A.

50.     Next seeks a declaration from this Court that the allegations of the Complaint do not constitute an "occurrence" as defined by the Policy; Coverage A does not cover the

allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## FOR A THIRD DECLARATION

51.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

52.     The Policy contains an Assault and Battery exclusion that excludes coverage under Coverage A for "'Bodily injury' or 'property damage' arising from, or caused in whole or in part by, an 'assault and battery.'"

53.     Per the Policy, the Assault and Battery exclusion applies for Coverage A "regardless of the degree of culpability or intent and without regard to: (1) Whether the 'assault and battery' is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly: (a) At the instruction or direction of, or is instigated by, the insured, or the insured's officers, 'employees,' 'volunteer workers,' agents, or servants; (b) By the insured's customers, patrons, or guests; (c) By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or (d) By any other person or entity, by any means or cause whatsoever; (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation,

training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (3) The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, 'employees,' 'volunteer workers,' agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to: (a) Prevent, bar, suppress, or halt an 'assault and battery' by any person; (b) Provide an environment safe from an 'assault and battery' by any person; or (c) Warn of the dangers of the environment that could contribute to an 'assault and battery' by any person."

54.     The Policy states that regarding the Assault and Battery exclusion for Coverage A, "[w]ithout limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with 'bodily injury' or 'property damage' arising from, or caused in whole or in part by, an 'assault and battery': (a) Emotional injury or distress; (b) One or more of loss of society, companionship, services, consortium, and income; (c) Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or (d) Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "bodily injury" or "property damage."

55.     "Assault and battery" are defined within the Policy to mean: "'Assault and battery' means one or more of the following: a. Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence; b. Harmful or offensive contact between or among two or more persons; c. Apprehension of harmful or offensive contact between or among two or more persons; d. Threats or abuse by words, acts, gestures, or deeds; e.

Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and f. Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) a., b., c., d., or e. above."

56.     The injuries and/or damages alleged in the Complaint arise from, or were caused in whole or in part by, an "assault and battery," and the Complaint alleges Brownlee was charged and pled guilty to Third Degree Assault and Battery regarding his conduct during the Subject Incident.

57.     Next seeks a declaration from this Court that the injuries and/or damages alleged in the Complaint arise from, or were caused in whole or in part by, an "assault and battery;" Coverage A does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## FOR A FOURTH DECLARATION

58.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

59.     The Policy's Coverage A contains an exclusion for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

60.     The Complaint alleges Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and these actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers," who allegedly took no action to stop it, allowed Brownlee to be present at and later re-enter the bar, and continued to sell and serve him alcohol.

61. The Complaint states Brownlee was subsequently arrested for this conduct and ultimately pled guilty to Third Degree Assault and Battery.

62. Next seeks a declaration from this Court that the injuries and/or damages alleged in the Complaint were expected or intended from the standpoint of the insured; Coverage A does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## **FOR A FIFTH DECLARATION**

63. The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

64. By virtue of the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, the Policy states Coverage A – Bodily Injury and Property Damage Liability applies only if the "bodily injury" . . . "Arises out of the project or operation shown in the Schedule."

65. By virtue of the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, the Policy states Coverage B  Personal And Advertising Injury Liability applies to "'personal and advertising injury' caused by an offense committed in the 'coverage territory' but only if: (1) The offense arises out of your business: (a) Performed on the premises shown in the Schedule; or (b) In connection with the project or operation shown in the Schedule . . . ."

66. The Schedule of Project or Operation attached to that endorsement states "Activities related to operating a restaurant." Moreover, that schedule states "Restaurant operations do not include: 4. Operations as a bar, tavern, sports bar, night club, cabaret,

discotheque, gentlemans club or similar business . . . 6. Selling or serving alcoholic beverages without a valid license, permit or training required to do so."

67.     The Complaint states "The Shelter is a bar that holds itself out to the public as a 'vibrant evening cocktail and music scene' where patrons can make 'memorable nights out," refers to Shelter as a "bar" multiple times, contends that Shelter carelessly and recklessly served alcohol to Brownlee when he was intoxicated in violation of South Carolina law, and failed to provide "adequate security at the bar."

68.     The injuries and/or damages alleged in the Complaint do not arise out of the project or operation shown in the Schedule attached to the Limitation of Coverage to Designated Premises, Project or Operation endorsement and therefore are not covered by Coverage A or Coverage B.

69.     Next seeks a declaration from this Court that the injuries and/or damages alleged do not arise out of the project or operation shown in the Schedule attached to the Limitation of Coverage to Designated Premises, Project or Operation endorsement; Coverage A and Coverage B do not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## **FOR A SIXTH DECLARATION**

70.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

71.     The Policy's Commercial General Liability Coverage Form states, in pertinent part, that for Coverage B – Personal and Advertising Injury Liability, Next will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and

advertising injury' to which this insurance applies" and Next "will have the right and duty to defend the insured against any 'suit' seeking those damages."

72.     The Policy defines "Personal and advertising injury" to means "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

73.     The allegations of the Underlying Lawsuit do not constitute "personal and advertising injury" as defined by the Policy and are therefore not covered under Coverage B.

74.     Next seeks a declaration from this Court that the injuries and/or damages alleged do not constitute "personal and advertising injury;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

**FOR A SEVENTH DECLARATION**

75.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

76.     Per the Policy, the insurance provided by Coverage B does not apply to "'Personal and advertising injury' caused by or at the direction of the insured with the

knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'."

77.     The Complaint alleges Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and these actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers," who allegedly took no action to stop it, allowed Brownlee to be present at and later re-enter the bar, and continued to sell and serve him alcohol.

78.     The Complaint states Brownlee was subsequently arrested for this conduct and ultimately pled guilty to Third Degree Assault and Battery.

79.     Even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," which they do not, such personal and advertising injury would have been caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

80.     Next seeks a declaration from this Court that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising injury would have been caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## FOR AN EIGHTH DECLARATION

81.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

82.    Per the Policy, the insurance provided by Coverage B does not apply to "'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured."

83.    The Complaint alleges Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and that he "physically picking her up, grabbing her buttocks in a sexual manner, making unwanted and unreciprocated verbal remarks of a sexual nature, and relentlessly following Ms. Maupin around the premises as she tried to get away from him – all without Ms. Maupin's permission or consent."

84.    The Complaint states Brownlee was subsequently arrested for this conduct and ultimately pled guilty to Third Degree Assault and Battery.

85.    The Complaint alleges Brownlee's actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers," who allegedly took no action to stop it, allowed Brownlee to be present at and later re-enter the bar, and continued to sell and serve him alcohol, in violation of South Carolina law.

86.    Even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," which they do not, such personal and advertising injury arose out of a criminal act committed by or at the direction of the insured."

87.    Next seeks a declaration from this Court that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising injury arose out of a criminal act committed by or at the direction of the insured;"

Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## **FOR A NINTH DECLARATION**

88.    The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

89.    The Policy's Assault and Battery Exclusion states the insurance provided by Coverage B does not apply to "personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery."

90.    The Policy states this exclusion "applies regardless of the degree of culpability or intent and without regard to: (1) Whether the 'assault and battery' is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly: (a) At the instruction or direction of, or is instigated by, the insured, or the insured's officers, 'employees,' 'volunteer workers,' agents, or servants; (b) By the insured's customers, patrons, or guests; (c) By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or (d) By any other person or entity, by any means or cause whatsoever; (2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, 'employees,' 'volunteer workers', agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any 'assault and battery,' whether or not such person was or is an officer, 'employee,' 'volunteer worker,' agent, or servant of the insured; or (3) The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, 'employees,' 'volunteer workers,' agents, or servants, or any other person for whom or entity that any insured was or is legally responsible,

to: (a) Prevent, bar, suppress, or halt an 'assault and battery' by any person; (b) Provide an environment safe from an 'assault and battery' by any person; or (c) Warn of the dangers of the environment that could contribute to an 'assault and battery' by any person.

91.     The Policy further states that "Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with 'personal and advertising injury' arising from, or caused in whole or in part by, an 'assault and battery': (a) Emotional injury or distress; (b) One or more of loss of society, companionship, services, consortium, and income; (c) Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or (d) Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the 'personal and advertising injury.'"

92.     Next seeks a declaration from this Court that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising injury arose from, or was caused in whole or in part by, an "assault and battery;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

<u>**FOR A TENTH DECLARATION**</u>

93.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

94.     The Policy contains an Abuse or Molestation Exclusion that is applicable to both Coverage A and Coverage B.  This exclusion states that the policy does not cover "Any liability arising out of: (1) The actual, threatened or alleged: (a) Sexual abuse; (b) Sexual molestation; (c) Sexual assault; (d) Sexual victimization; (e) Physical abuse; (f) Physical assault; or (g) Coercion

to engage in sexual activities; of any person by any 'employee', assistant, 'volunteer worker' or member of any insured; or (2) Any injury resulting from the actual, threatened or alleged acts listed in subparagraphs (1)(a) through (1)(g) above; or (3) The negligent: (a) Employment; (b) Investigation; (c) Supervision; (d) Reporting or failure to report to the proper  authorities; or (e) Retention of any 'employee', assistant, 'volunteer worker' or member of any insured whose conduct would be excluded by subparagraph 1. above."

95.     According to Defendant Maupin's Complaint, Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and these actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers."  The Complaint alleges Brownlee's conduct included "physically picking her up, grabbing her buttocks in a sexual manner, making unwanted and unreciprocated verbal remarks of a sexual nature, and relentlessly following Ms. Maupin around the premises as she tried to get away from him – all without Ms. Maupin's permission or consent."

96.     The Complaint alleges Brownlee's actions were "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers," who allegedly took no action to stop it, allowed Brownlee to be present at and later re-enter the bar, and continued to sell and serve him alcohol, in violation of South Carolina law.

97.     Next seeks a declaration from this Court that the allegations of the Complaint fit within this exclusion;" the Policy does not afford Coverage A or Coverage B for the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter.

## <u>FOR AN ELEVENTH DECLARATION</u>

98.     The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

99.     The Policy contains a "Non-Compensatory Damages" exclusion, which provides: "This insurance does not apply to any claim for or awards of non-compensatory damages, including, but not limited to: 1. Punitive, exemplary or multiple damages; 2. Equitable or non-pecuniary relief; or 3. Fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards."

100.    The Underlying Lawsuit prays for an award of punitive damages.

101.    Next seeks a declaration from this Court that any award of punitive damages, or any other damages that fit within the Non-Compensatory Damages exclusion, are not covered by the Policy and Next has no duty to indemnify Shelter for a judgment of such damages.

## FOR A TWELFTH DECLARATION

102.    The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

103.    The Policy contains a Miscellaneous Service Providers Professional Liability endorsement that states Next "will pay all sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' caused by a 'professional incident' to which this insurance applies."  "Professional incident" is defined as "a. An actual or alleged negligent act, error or omission in the rendering of or failure to render 'professional services' for others by an insured."  "Professional services" is defined to mean "only those services or activities described as part of the Class Description in the SCHEDULE above," and that Schedule states "Activities related to operating a restaurant."  Moreover, that schedule states "Restaurant operations do not include: 4. Operations as a bar, tavern, sports bar, night club,

cabaret, discotheque, gentlemans club or similar business. . . . 6. Selling or serving alcoholic beverages."

104.    The Miscellaneous Service Providers Professional Liability endorsement excludes coverage for "c. 'Bodily injury' or 'property damage' resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct; d. 'Bodily injury' or 'property damage' caused by a person under the influence of intoxicants or narcotics; g. 'Bodily injury' or 'property damage' arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured; h. 'Bodily injury' or 'property damage' arising out of the performance of any dishonest, fraudulent, or criminal acts . . . ."

105.    The Complaint states "The Shelter is a bar that holds itself out to the public as a 'vibrant evening cocktail and music scene' where patrons can make 'memorable nights out,'" refers to Shelter as a "bar" multiple times, contends that Shelter carelessly and recklessly served alcohol to Brownlee when he was intoxicated in violation of South Carolina law, and failed to provide "adequate security at the bar."

106.    The Complaint alleges Brownlee "proceeded to repeatedly and overtly stalk, harass, and inappropriately touch [Defendant Maupin] against her will and without her consent," and that this was "conducted in the presence and view of multiple employees and/or agents of Shelter, including doormen, security personnel, bartenders, and/or servers," who allegedly took no action to stop it, allowed Brownlee to be present at and later re-enter the bar, and continued to sell and serve him alcohol, in violation of South Carolina law.

107.    The Complaint alleges Brownlee was under the influence of intoxicants during the Subject Incident.

108.     The Complaint states Brownlee was subsequently arrested for his conduct during the Subject Incident and ultimately pled guilty to Third Degree Assault and Battery.

109.     The injuries and/or damages alleged in the Complaint do not arise out of the project or operation shown in the Schedule attached to the Miscellaneous Service Providers Professional Liability endorsement and therefore are not covered by that endorsement.

110.     Even assuming *arguendo*, that the injuries and/or damages alleged in the Complaint arose out of the project or operation shown in the Schedule attached  to the Miscellaneous Service Providers Professional Liability endorsement, which they do not, such injuries and/or damages are still not covered by the endorsement because the endorsement excludes coverage c. for "Bodily injury" or "property damage" "resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct;" d. "Bodily injury" or "property damage" "caused by a person under the influence of intoxicants or narcotics;" g. "Bodily injury" or "property damage" "arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured;" and h. "Bodily injury" or "property damage" arising out of the performance of any dishonest, fraudulent, or criminal acts . . . ."

111.     Next seeks a declaration from this Court that the injuries and/or damages alleged do not arise out of the project or operation shown in the Schedule attached to the Miscellaneous Service Providers Professional Liability endorsement and are therefore not covered; and even assuming *arguendo* that such allegations did arise out of the project or operation shown in that schedule, such injuries and/or damages are still not covered by the endorsement because of the aforementioned exclusions; and Next does not have duties to defend or indemnify Shelter.

## **FOR A THIRTEENTH DECLARATION**

112.    The allegations in the preceding paragraphs are realleged as though repeated verbatim herein.

113.    In addition to the aforementioned provisions of the Policy, no other provisions of the Policy afford coverage for any claims or damages alleged in the Underlying Lawsuit.

114.    Next seeks a declaration from the Court that no other provisions of the Policy afford coverage for any claims or damages alleged in the Underlying Lawsuit, and Next does not have duties to defend or indemnify Shelter in the Underlying Lawsuit.

WHEREFORE, Next prays:

(a)    that the Court issue a declaration that some or all of the allegations of the Complaint do not constitute "damages because of 'bodily injury' or 'property damage' to which this insurance applies;" the Policy does not afford coverage for some or all claims or damages alleged in the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter in the Underlying Lawsuit;

(b)    that the Court issue a declaration that the allegations of the Complaint do not constitute an "occurrence" as defined by the Policy; Coverage A does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter in the Underlying Lawsuit;

(c)    that the Court issue a declaration that the injuries and/or damages alleged in the Complaint arise from, or were caused in whole or in part by, an "assault and battery;" Coverage A does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(d)    that the Court issue a declaration that the injuries and/or damages alleged in the Complaint were expected or intended from the standpoint of the insured; Coverage A does not

cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(e)     that the Court issue a declaration that the injuries and/or damages alleged do not arise out of the project or operation shown in the Schedule attached to the Limitation of Coverage to Designated Premises, Project or Operation endorsement; Coverage A and Coverage B do not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(f)     that the Court issue a declaration that the injuries and/or damages alleged do not constitute "personal and advertising injury;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(g)     that the Court issue a declaration that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising injury would have been caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(h)     that the Court issue a declaration that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising injury arose out of a criminal act committed by or at the direction of the insured;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter in the Underlying Lawsuit;

(i)     that the Court issue a declaration that even assuming *arguendo* that the allegations of the Complaint constituted "personal and advertising injury," such personal and advertising

28

injury arose from, or was caused in whole or in part by, an "assault and battery;" Coverage B does not cover the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(j)    that the Court issue a declaration that the allegations of the Complaint fit within the Abuse or Molestation Exclusion; the Policy does not afford Coverage A or Coverage B for the allegations of the Underlying Lawsuit; and Next does not have duties to defend or indemnify Shelter;

(k)    that the Court issue a declaration that any award of punitive damages, or any other damages that fit within the Non-Compensatory Damages exclusion, are not covered by the Policy and Next has no duty to indemnify Shelter for a judgment of such damages;

(l)    that the Court issue a declaration that the injuries and/or damages alleged do not arise out of the project or operation shown in the Schedule attached to the Miscellaneous Service Providers Professional Liability endorsement and are therefore not covered; and even assuming *arguendo* that such allegations did arise out of the project or operation shown in that schedule, such injuries and/or damages are still not covered by the endorsement because of the aforementioned exclusions; and Next does not have duties to defend or indemnify Shelter;

(m)    that the Court issue a declaration that no other provisions of the Policy afford coverage for any claims or damages alleged in the Underlying Lawsuit, and Next does not have duties to defend or indemnify Shelter in the Underlying Lawsuit;

(n)    that the Court awards such other relief as this Court deems just and proper.

TURNER PADGET GRAHAM & LANEY, P.A.

By: */s/ Robert E. Kneece III*
Robert E. Kneece III, Fed. ID No.:  12351
40 Calhoun Street, Suite 200 (29401)
P.O. Box 22129
Charleston, South Carolina 29413
Telephone:  (843) 576-2829
Facsimile:  (843) 843-577-1639
Email: RKneece@TurnerPadget.com

Charleston, SC

August 20, 2025

ATTORNEYS FOR NEXT INSURANCE US COMPANY